**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

JOANNE M. WILLIAMS  AND JOANNE M.
WILLIAMS as Trustee for the Estate of
Frederick B. Williams, Sr.,
　　*Plaintiffs*,

　　v.

COUNTRYWIDE BANK ET. AL,
　　*Defendants.*

No. 3:18-cv-2007 (VAB)

---

**RULING AND ORDER ON MOTION TO DISMISS**

　　Joanne M. Williams, also known as Joanne M. Wojtaszek[1] ("Plaintiff"), in her individual

capacity and as Trustee for the Estate of Frederick B. Williams, Sr., her late father, has sued

Countrywide Bank, FSB, doing business as Bank of America, N.A.; Countrywide Bank, N.A.,

doing business as Bank of America, N.A.; Countrywide Home Loans, Inc., doing business as

Bank of America Home Loans; BAC Home Loans Servicing, L.P., formerly known as

Countrywide Home Loans Servicing, LP; BAC Home Loans Servicing, L.P., doing business as

Bank of America Home Loans; Bank of America, N.A., also known as Countrywide Bank, N.A.;

and Bank of America Corporation (collectively, "Bank of America"); Nationstar Mortgage LLC;

and Caliber Home Loans, Inc., doing business as Caliber Home Loans and Caliber Home Loans

Servicing (collectively, with Bank of America, "Defendants"). Am. Compl., ECF No. 34-1 (Mar.

13, 2019).

---

[1] The Court will refer to the Plaintiff as Ms. Williams for clarity, including where allegations or public records list
her as Joanne Wojtaszek.

Ms. Williams alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and state law claims relating to her late father's mortgage and subsequent financial transactions. *Id.*

Defendants have filed three motions to dismiss. Mot. to Dismiss, ECF No. 44 (Sept. 5, 2019) ("Nationstar Mot."); Mot. to Dismiss, ECF No. 45 (Sept. 5, 2019) ("BOA Mot."); Mot. to Dismiss, ECF No. 46 (Sept. 6, 2019) ("Caliber Mot.").

For the following reasons, the motions to dismiss are **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Allegations[2]

<u>Parties</u>

Ms. Williams is an individual and resident of the State of Connecticut and Trustee for the Estate of Frederick B. Williams, Sr. ("the Estate"), her late father. Am. Compl. ¶¶ 1–2.

Defendants, all allegedly corporations or national financial institutions that conduct business in Connecticut, include a group of now merged financial institutions:

- Countrywide Bank, FSB, doing business as Bank of America, N.A., *id.* ¶ 3;
- Countrywide Bank, N.A., doing business as Bank of America, N.A., *id.* ¶ 4 (together with Countrywide Bank, FSB, "Countrywide");
- Countrywide Home Loans, Inc., doing business as Bank of America Home Loans, *id.* ¶ 5 ("Countrywide Home Loans");
- BAC Home Loans Servicing, L.P., formerly known as Countrywide Home Loans Servicing, LP, *id.* ¶ 6;

---

[2] All factual allegations are drawn from the Amended Complaint, Am. Compl., ECF No. 34-1 (Mar. 14, 2019); documents incorporated into the Amended Complaint by reference, and matters in the public record of which the Court takes judicial notice. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal citation and quotation marks omitted)); *see also In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of bankruptcy court docket and filings); *Illarramendi v. United States*, No. 3:16-cv-1853 (SRU), 2020 WL 656698, at *6 n.4 (D. Conn. Feb. 11, 2020) (taking judicial notice of public land records, as such matters "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (quoting Fed. R. Evid. 201(b)) (internal quotation marks omitted)).

- BAC Home Loans Servicing, L.P., doing business as Bank of America Home Loans, *id.* ¶ 7 (together with BAC Home Loans Servicing, L.P., "BAC Home Loans");
- Bank of America, N.A., also known as Countrywide Bank, N.A., *id.* ¶ 8; and
- Bank of America Corporation, *id.* ¶ 9, (together with Bank of America, N.A., "Bank of America").

These seven named defendant financial institutions (collectively, "Bank of America") merged with each other before the filing of this lawsuit. *See* Am. Compl. ¶ 13. Mem. in Supp. of Mot. to Dismiss at 6, ECF No. 45-1 (Sept. 5, 2019) ("BOA Mem."); Obj. to Mot. to Dismiss at 2, ECF No. 55 (Sept. 29, 2019) ("Pl.'s Obj. to BOA").

In addition to the Bank of America Defendants, Ms. Williams has sued Nationstar Mortgage LLC ("Nationstar") and Caliber Home Loans, Inc., doing business as Caliber Home Loans and Caliber Home Loans Servicing ("Caliber"). Am. Compl. ¶¶ 10–11.

<u>Relevant Events</u>

On May 16, 2003, Frederick B. Williams and Josephine Z. Williams, borrowers, granted a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for the lender, Advanced Financial Services, Inc., to secure a loan in the amount of $139,500.00, for 42 Florence Lane, Plainville, Connecticut ("the Florence Lane House"). Open-End Mortgage Deed, Town of Plainville Land Evidence Records, Vol. 411 at 206 (May 16, 2003)[3] ("the 2003 Mortgage").

Around November 5, 2004, Mr. Williams, Plaintiff's father, died in a house fire at the Florence Lane House. Am. Compl. ¶ 2. Nearly all of Mr. Williams's documents and records were also allegedly lost in the fire. *Id.* ¶ 3.

---

[3] Except where otherwise indicated, all land records for the Florence Lane house can be found by entering "42 Florence Lane" at https://recordhub.cottsystems.com/PlainvilleCT/Search/Records.

At the time of his death, Mr. Williams allegedly had a loan balance of about $137,400 on the Florence Lane House which was allegedly secured by a non-assumable mortgage with Countrywide. *Id.* ¶ 4.

At some point following Mr. Williams's death, allegedly without Ms. Williams's knowledge, AIG Colonial Penn allegedly sent a check to Countrywide paying off her father's mortgage. *Id.* ¶¶ 31, 35 (Count I[4]).

On June 21, 2005, allegedly "as a result of a claim" and for the purpose of rebuilding the Florence Lane House, insurance company AIG Colonial Penn allegedly issued another a check in the amount of $130,797.59, made payable to the "Estate of Frederick B. Williams, Bill Kapura Building Contract, Countrywide Home Loans c/o." *Id.* ¶ 5.

On August 9, 2005, the Estate conveyed the deed for the Florence Lane House to Ms. Williams. Executor or Administrator Deed, Town of Plainville Land Evidence Records, Vol. 458 at 1306 (Aug. 9, 2005) ("the 2005 Conveyance").

Sometime in August 2005, while reconstruction of the Florence Lane House was allegedly ongoing, Countrywide Home Loans allegedly "called Ms. Williams and told her 'If you don't assume your father's mortgage, reconstruction would STOP.'" Am. Compl. ¶¶ 8, 33 (Count I). At this time, however, Defendants were allegedly already in possession of the alleged check from AIG paying off the remainder of Mr. Williams's mortgage, and they allegedly knew that the mortgage was non-assumable, but they allegedly failed to tell Ms. Williams that the mortgage was paid off. *Id.* ¶¶ 9, 35 (Count I).

Around August 23, 2005, Ms. Williams allegedly paid $100.00 as consideration to assume her father's mortgage in response to Countrywide Home Loans's alleged call. *Id.* ¶ 9.

---

[4] The Amended Complaint repeats paragraph numbers beyond paragraph number 32. The Court refers to counts where necessary for clarity.

Around June 28, 2006, AIG allegedly issued another check in the amount of $66,783.00, made payable to the order of the "Estate of Frederick B. Williams, Bill Kapura Building Contractors c/o Joanne M. Wojtaszek, Exec 42 Florence Lane, Plainville, CT 06062-1054," *id.* ¶ 6, allegedly for the purpose of rebuilding the Florence Lane House. *Id.*

On October 23, 2006, Joanne Williams, borrower, granted a mortgage to MERS, as nominee for the lender, Webster Bank, to secure a loan in the amount of $225,000.00, for the Florence Lane House. Open-End Mortgage Deed, Town of Plainville Land Evidence Records, Vol. 480 at 597 (Oct. 23, 2006) ("the 2006 Mortgage").

In October 2006, Ms. Williams allegedly refinanced by taking out a loan ("Refinanced Loan") from Webster Bank in the amount of $237,000. Am. Compl. ¶ 10. It is not clear whether this alleged Refinanced Loan and the 2006 Mortgage are one and the same.

Ms. Williams allegedly used the Refinanced Loan to pay off the 2003 Mortgage, which she allegedly had been paying since she assumed it in August 2005. *Id.* Countrywide[5] allegedly sent Ms. Williams a confirmation letter stating: "PAID IN FULL." *Id.* ¶ 11.

On October 27, 2006, MERS released and discharged the 2003 Mortgage. Release of Mortgage, Town of Plainville Land Evidence Records, Vol. 481 at 106 (Oct. 27, 2006).[6]

On October 30, 2006, Ms. Williams was allegedly told that Webster Bank had sold or transferred her Refinanced Loan to Countrywide. Am. Compl. ¶ 12.

On February 25, 2008, Ms. Williams, borrower, granted a mortgage to MERS as nominee for the lender, Countrywide, to secure a loan in the principal amount of $236,000, for the

---

[5] Plaintiff states that "Bank of America, N.A. aka Countrywide Bank, FSB confirmed receipt." Am. Compl. ¶ 11.

[6] https://recordhub.cottsystems.com/PlainvilleCT/Search/Records (select "All" dropdown hyperlink; select "Book Page"; enter "481" into Book field and "106" into Page field).

Florence Lane House. Open-End Mortgage Deed, Town of Plainville Land Evidence Records, Vol. 499 at 255 (Oct. 23, 2006) ("the 2008 Mortgage").

On March 3, 2008, MERS released and discharged the 2006 Mortgage. Release of Mortgage, Town of Plainville Land Evidence Records, Vol. 499 at 584 (Mar. 3, 2008).[7]

In 2008, Bank of America allegedly purchased Countrywide.[8] Am. Compl. ¶ 13.

Around August 24, 2009, BAC Home Loans allegedly initiated a foreclosure action against Ms. Williams. *Id.* ¶ 14. In January 2010, the mortgage was allegedly modified, and the foreclosure action was allegedly dismissed in June 2010. *Id.*

On February 15, 2012, Nationstar allegedly acquired the mortgage from Bank of America, which had by this time merged with BAC Home Loans. Am. Compl. ¶ 16.[9]

On November 8, 2012, Bank of America assigned the 2008 Mortgage to Nationstar. Corporation Assignment of Mortgage, Town of Plainville Land Evidence Records, Vol. 580 at 459 (Nov. 8, 2012); Am. Compl. ¶ 16. Along with the mortgage, Bank of America allegedly transferred $152,000 in insurance proceeds to Nationstar which had been allegedly released to Countrywide around the time Ms. Williams assumed the mortgage in 2005. Am. Compl. ¶ 22. These funds allegedly were intended to pay off Mr. Williams's original mortgage. *Id.* ¶ 18. Ms. Williams was allegedly unaware of these insurance proceeds. *Id.*

Around February 26, 2013, Nationstar initiated a foreclosure action against Ms. Williams in Connecticut Superior Court for the Judicial District of New Britain, Connecticut. *Id.* ¶ 15;

---

[7] https://recordhub.cottsystems.com/PlainvilleCT/Search/Records (select "All" dropdown hyperlink; select "Book Page"; enter "499" into Book field and "584" into Page field).

[8] Countrywide and Bank of America apparently merged on April 27, 2009. BOA Mem. at 6.

[9] BAC Home Loans and Bank of America apparently merged by July 1, 2011. BOA Mem. at 6.

*Nationstar Mortgage LLC v. Williams*, No. HHB-CV-136019587-S (Conn. Super. Ct.) ("Nationstar Foreclosure Action Docket").

By July 2015, Ms. Williams allegedly believed[10] that her father had documents proving he had insurance to pay off the mortgage which were lost in the fire at the Florence Lane House. *Id.* ¶ 19. Yet, Nationstar and Bank of America "consistently told her that they had no records of any payment of the mortgage of her father." *Id.*

In July 2015, presumably during a proceeding related to the Nationstar foreclosure,[11] Nationstar allegedly "admitted in open court that it had possession" of the $152,000 in insurance proceeds from the time Ms. Williams assumed her father's mortgage in August 2005 intended to pay off the mortgage, but it did not know how to release the funds, *id.* ¶ 18, allegedly stating that "we can see the money but we just don't know how to grab it," *id.* ¶¶ 33 (Count II), 52 (Count VIII). These funds allegedly still have neither been released to Ms. Williams nor escheated to the State of Connecticut as unclaimed funds. *Id.* ¶¶ 21–23.

During July 2015, a representative from Caliber, also allegedly in privity with Nationstar, told Ms. Williams, "I can [see] the money on another system . . . but we can't apply [it]." *Id.* ¶ 35 (Count II). On another occasion in July 2015, a Caliber representative allegedly told Ms. Williams that "[t]here is a balance from the construction loan [for the Florence Lane House, but] we don't know how to refund it." *Id.* ¶ 35 (Count II).

---

[10] Ms. Williams alleges that "[u]p until" July 2015 she "had continuously professed" this belief, Am. Compl., ¶ 19, but the Amended Complaint does not allege when this belief began.

[11] Ms. Williams does not specify to what "open court" proceeding she refers, but the Court assumes, for the purposes of these motions to dismiss, that she refers to a proceeding related to Nationstar's foreclosure action.

On July 13, 2015,[12] allegedly "without [Ms. Williams] being able to prove the existence of the pay-off checks issued by the insurance company on behalf of her father," Nationstar foreclosed on the Florence Lane House. *Id.* ¶ 30; *see also* Order for Judgement of Strict Foreclosure, *Nationstar Mortgage*, No. HHB-CV-136019587-S (Conn. Super. Ct. July 12, 2013), Docket Entry No. 107.01 ("Judgment of Strict Foreclosure"). The Connecticut Superior Court originally set Law Day for October 13, 2015, *id.*, but subsequently extended it, *see* Nationstar Foreclosure Action Docket.

On December 4, 2015, Ms. Williams filed a notice of bankruptcy in the Nationstar Foreclosure Action. Notice of Bankruptcy, *Nationstar Mortgage*, No. HHB-CV-136019587-S (Conn. Super. Ct. July 12, 2013), Docket Entry No. 150.00.

On April 9, 2018, after the Connecticut Superior Court granted further extensions, Law Day ultimately passed without Ms. Williams redeeming the Florence Lane House, and, as a result, vested title in the house to Nationstar.[13] *See* Order Granting Mot. to Open Judgment and Setting New Law Day, *Nationstar Mortgage*, No. HHB-CV-136019587-S (Conn. Super. Ct. Mar. 12, 2018), Docket Entry No. 167.01 ("Order Setting New Law Day"); Nationstar Foreclosure Action Docket.

By around May 8, 2018, Caliber, allegedly in privity with Nationstar, was servicing Ms. Williams's Refinanced Loan, which was then in foreclosure. *Id.* ¶¶ 25–26. By this time, Caliber allegedly knew that, in addition to the $152,000 of insurance proceeds allegedly intended to pay

---

[12] Ms. Williams alleges that the foreclosure date was July 31, 2015, Am. Compl. ¶ 30, but state court records indicate that strict foreclosure was entered on July 13, 2015.

[13] A trial court may, "in its discretion, upon a finding of cause shown, [ ] open and modify a judgment of strict foreclosure upon the motion of the mortgagor at any time after judgment has been rendered, so long as the law days have not passed. Once the law days have passed, the mortgagee holds absolute title to the property and the judgment of strict foreclosure cannot be opened or modified." *U.S. Bank Nat'l Ass'n v. Works*, 160 Conn. App. 49, 58 (2015) (citing Conn. Gen. Stat. § 49-15(a)(1)).

off Mr. Williams's original mortgage, Caliber possessed a balance of the construction funds that should have been returned to Ms. Williams. *Id.* ¶ 26. Caliber allegedly never made an effort to return the funds. *Id.*

At some point, Ms. Williams's husband contacted Caliber to inquire about the funds, but was told that they had not transferred to Caliber with the note and the mortgage and that he should contact Bank of America. *Id.* ¶ 28. Ms. Williams alleges that the balance of construction funds is in an account with either Nationstar or Bank of America. *Id.* ¶ 27.

In May 2018, an agent of AIG allegedly located copies of checks showing that funds to pay off Mr. Williams's mortgage had been sent to Ms. Williams "c/o Countrywide," and sent the copies of the checks to Ms. Williams. *Id.* ¶ 31. Countrywide allegedly concealed the existence of these funds, "never attempted to obtain [Ms. Williams's] signature . . . before negotiating the check and never applied it toward the balance of [Mr. Williams's] mortgage." *Id.*

Ms. Williams alleges that "[o]ne or all the Defendants are still holding the funds belonging to [her] as the pay-off payment was never applied [to the mortgage] and the balance of construction payment was never returned" to her. *Id.* ¶ 32.

### B.  Procedural History

On December 9, 2018, Ms. Williams sued Defendants, plus one additional defendant (U.S. Bank Trust). Compl., ECF No. 1 (Dec. 9, 2018).

Defendants filed various motions to dismiss the initial Complaint. *See* Mot. to Dismiss, ECF No. 28 (Feb. 21, 2019); Mot. to Dismiss, ECF No. 29 (Feb. 25, 2019); Mot. to Dismiss, ECF No. 30 (Feb. 25, 2019).

On March 14, 2019, Ms. Williams moved to file an amended complaint, dropping her allegations against U.S. Bank Trust. Mot. to Amend, ECF No. 34 (Mar. 14, 2019); Am. Compl.

On August 16, 2019, the Court granted Ms. Williams's motion to amend her Complaint over Defendants' objections and denied Defendants' pending motions to dismiss as moot. Order, ECF No. 43 (Aug. 16, 2019), *available at* 2019 WL 3858659.

On September 5, 2019, Nationstar moved to dismiss the Amended Complaint. Nationstar Mot. In support of its motion, Nationstar filed a memorandum of law, Mem. in Supp. of Mot. to Dismiss, ECF No. 44-1 (Sept. 5, 2019) ("Nationstar Mem."); and eight exhibits, Exs., ECF Nos. 44-2–44-9. These exhibits included a transcript of a hearing in the Connecticut Superior Court, Judicial District of New Britain, during the Nationstar Foreclosure Action. Ex. C, ECF No. 44-4 (Transcript, *Nationstar Mortgage LLC v. Williams*, No. HHB-CV-136019587-S (Conn. Super. Ct. July 13, 2015)) ("Tr.").

On September 5, 2019, Bank of America moved to dismiss. BOA Mot. In support of their motion, they filed a memorandum of law, Mem. in Supp. of Mot. to Dismiss, ECF No. 45-1 (Sept. 5, 2019) ("BOA Mem."); and five exhibits, Exs., ECF Nos. 45-2–45-6.

On September 6, 2019, Caliber moved to dismiss, filing a memorandum of law in support. Caliber Mot.; Mem. in Supp. of Mot. to Dismiss, ECF No. 46-1 (Sept. 6, 2019) ("Caliber Mem.").

On September 26, 2019, Ms. Williams filed an objection to the motions to dismiss filed by Nationstar and Caliber. Obj. to Mots. to Dismiss, ECF No. 50 (Sept. 27, 2019) ("Pl.'s Obj. to Nationstar & Caliber").

On September 29, 2019, Ms. Williams filed an objection to the motion to dismiss filed by Bank of America. Pl.'s Obj. to BOA.

On October 7, 2019, Caliber filed a reply to Ms. Williams' objection in further support of its motion to dismiss. Reply, ECF No. 56 (Oct. 7, 2019) ("Caliber Reply").

On October 11, 2019, Bank of America filed a reply to Ms. Williams's objection in further support of their motion to dismiss. Reply, ECF No. 57 (Oct. 11, 2019) ("BOA Reply").

On July 9, 2020, the Court held a telephonic hearing on the pending motions to dismiss. Minute Entry, ECF No. 61 (July 9, 2020).

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1) Motions

Federal courts are courts of limited jurisdiction. U.S. Const., Art. III. In order for a court to exercise subject matter jurisdiction, either (1) the plaintiff must set forth a colorable claim arising under the U.S. Constitution or a federal statute, thus invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331; or (2) there must be complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy must exceed $75,000 under 28 U.S.C. § 1332. *See DaSilva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (identifying and discussing the two categories of subject matter jurisdiction). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). Thus, where jurisdiction is lacking, dismissal is mandatory. *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983).

Under Federal Rule of Civil Procedure 12(b)(1), the facts alleged in the complaint are viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in the plaintiff's favor. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo. . . . Moreover[,] the court

11

must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)).

"On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

### B. Rule 12(b)(6) Motions

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Ms. Williams alleges numerous claims against Defendants in ten counts: (1) fraud as to Bank of America; (2) fraud as to Nationstar and Caliber; (3) conversion as to all Defendants; (4) replevin under Conn. Gen. Stat. § 52-575 *et seq.* as to all Defendants; (5) common law replevin as to all Defendants; (6) unjust enrichment as to all Defendants; (7) violation of the Connecticut Unfair Trade Practices Act (CUTPA) as to Bank of America; (8) violation of CUTPA as to Nationstar and Caliber; (9) violation of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as to all Defendants; and (10) violation of the Connecticut

Fair Debt Collection Practices Act ("CFDCPA"), Conn. Gen. Stat. § 36a-646 *et seq.*, as to all Defendants. Am. Compl.

At oral argument, however, counsel for Ms. Williams agreed to dismiss her claims under the FDCPA and the CFDCPA. Ms. Williams's state claims for fraud, conversion, replevin, and unjust enrichment, and her CUTPA claims, remain.[14]

She seeks $20 million in damages, plus punitive damages; return of the alleged funds intended to pay off the mortgage, with interest; return of the construction funds, with interest; return of the amount Ms. Williams allegedly paid to pay off the mortgage when she took out the Refinanced Loan, with interest; return of Ms. Williams's funds from a bank account allegedly in Defendants' control; statutory and actual damages under 12 U.S.C. § 2605(f); and attorney's fees and costs. Am. Compl. at 18.

Defendants have moved to dismiss all of Plaintiff's claims. Bank of America has also moved to dismiss for lack of subject matter jurisdiction and based *on res judicata*.

### A. Subject Matter Jurisdiction

The *Rooker-Feldman* doctrine bars a party "from seeking what is in substance appellate review of the state judgment in federal district court based on the party's claim that the state judgment violates his or her federal rights." *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). The *Rooker-Feldman*

---

[14] Although Ms. Williams's federal claim has been dismissed and the remaining state law claims could be dismissed without prejudice to renewal in state court, under the circumstances of this particular case—with underlying issues going back more than fifteen years and, as discussed further below, previous efforts to recycle the same basic claims in other court proceedings – the Court will use its discretion to exercise supplemental jurisdiction over Ms. Williams's remaining state claims. *See Parker v. Della Rocco*, 252 F.3d 663, 666 (2d Cir. 2001) ("[T]he district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, [even though] it cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (internal quotation marks omitted))); *see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996) (upholding district court's exercise of supplemental jurisdiction, in part, to address a "fairly bald effort to avoid an unfavorable outcome").

doctrine renders certain cases beyond the reach of the federal district courts. *Feldman*, 460 U.S. at 486 ("Federal district courts do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."). Four requirements must be met for the doctrine to apply:

> (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by that state court judgment; (3) the plaintiff must invite the district court to review and reject the judgment; and (4) the state court judgment must have been rendered before the district court proceeding commenced.

*Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

The *Rooker-Feldman* doctrine applies to foreclosure actions in the Second Circuit. *See, e.g.*, *U.S. Bank, Nat'l Ass'n as Tr. for Bear Stearns Asset Backed Sec. I Tr. 2006-AC1, Asset-Backed Certificates, Series 2006-AC1 v. Profeta*, No. 3:18-cv-1710 (CSH), 2019 WL 2185725, at *6 (D. Conn. Mar. 26, 2019) ("[T]he Second Circuit has held that district courts lack jurisdiction over completed foreclosure actions, as well as collateral attacks upon them, on jurisdictional grounds based on the abstention doctrine set forth in [*Rooker*]." (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014)); *see also Gonzalez v. Deutsche Bank Nat'l Tr. Co.*, 632 F. App'x 32, 34 (2d Cir. 2016) ("[I]nsofar as plaintiffs here (1) contend that Deutsche Bank (a) lacked standing to pursue their home's foreclosure in state court, . . . or (b) fraudulently obtained title to the home, . . . or (2) seek to recover for injuries caused by the state judgment, their claims are barred because the validity of the foreclosure was already fully adjudicated in the state-court proceeding.") (summary order).

The Court, however, "must engage in a case-by-case determination of the applicability of the *Rooker–Feldman* doctrine, even in a case concerning a foreclosure." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 250 (D. Conn. 2017) (internal citation and quotation marks omitted).

Bank of America argues that the Court lacks subject matter jurisdiction because, under the *Rooker-Feldman* doctrine, the Amended Complaint constitutes an improper collateral attack on a Connecticut Superior Court judgment of strict foreclosure against the Florence Lane House in 2013. BOA Mem. at 10, 12–13.

Ms. Williams argues that *Rooker-Feldman* does not bar her claims because she "do[es] not ask this [C]ourt to vacate the foreclosure judgment or return the property," but rather only requests money damages and attorney's fees. Pl.'s Obj. to BOA at 5.

Bank of America argues in reply that Ms. Williams's "request that the Court order a return of the 'pay-off of the mortgage funds . . . return of the construction funds . . . return of pay-off of the assume[d] mortgage'" shows that "the Amended Complaint is simply an attempt by Plaintiff to circumvent the Judgment of Strict Foreclosure, which is precisely the situation that the *Rooker-Feldman* doctrine is designed to prevent." BOA Reply at 3 (quoting Am. Compl. at 18). In their view, the "Court cannot grant Plaintiff the relief she seeks without concluding that the State Superior Court erred in rendering the Judgment of Strict Foreclosure against Plaintiff[.]" *Id.*

The Court disagrees.

Ms. Williams did lose a foreclosure action in state court which concluded before she commenced this lawsuit. The first and fourth *Hoblock* requirements therefore are satisfied here. The second and third requirements, however, arguably are not.

Claims seeking damages for defendants' alleged fraud or deceptive debt collection practices do not require a federal court to sit in review of a state court judgment of foreclosure. *See Vossbrinck*, 773 F.3d at 426–27 (plaintiff's claims that defendants "had violated various state and federal laws in issuing and servicing his loan" were not barred by *Rooker-Feldman* "because they seek damages from [d]efendants for injuries [plaintiff] suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment"); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (summary order) ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment.").

Moreover, if a plaintiff "presents some independent claim," even "one that denies a legal conclusion that a state court has reached in a case to which he was a party[,] then there is jurisdiction." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). Thus, when a plaintiff states claims that are "independent from the state court judgment of foreclosure," *McCann v. Rushmore Loan Mgmt. Servs., LLC*, No. 15-CV-6502, 2017 WL 1048076, at *4 (E.D.N.Y. Mar. 16, 2017), *Rooker–Feldman* does not deprive the court of jurisdiction. This is true "even if the [claims] involve the identical subject matter and parties as previous state-court suits." *Hoblock*, 422 F.3d at 86; *see also Tanasi*, 257 F. Supp. 3d at 253 (holding that because plaintiffs "'pointedly avoid' arguing that their foreclosure was wrongly decided or seeking injunctive relief against the foreclosure" but argue, "rather, that [defendant] committed independent violations of [consumer protection statutes including CUTPA,] and all of

which grant [plaintiffs] independent rights as consumers and borrowers," *Rooker-Feldman* did

not bar their claims).

On its face, Ms. Williams's Amended Complaint does not invite the Court to review or

vacate the judgment of any state foreclosure action. Rather, Ms. Williams alleges that

Defendants fraudulently pursued foreclosure actions against her and wrongfully withheld

insurance proceeds from her, and that Defendants violated CUTPA, a consumer protection

statute. Ms. Williams thus alleges that her injuries were a result of Defendants' allegedly

unlawful actions, not a result of the state court judgment. She does not seek title to the Florence

Lane House or to overturn the foreclosure judgment, but rather the return of alleged insurance

proceeds and damages.

Accordingly, because all four requirements under *Hoblock* arguably are not met here, the

*Rooker-Feldman* doctrine likely does not apply.

### B. Res Judicata

Nevertheless, the doctrine of *res judicata* provides that "a party may not split causes of

action that could be brought and resolved together." *Vandever v. Emmanuel*, 606 F. Supp. 2d

253, 254 (D. Conn. 2009) (internal citations omitted); *see also Mazziotti v. Allstate Ins. Co.*, 240

Conn. 799, 812 (Conn. 1997) ("[A] final judgment, when rendered on the merits, is an absolute

bar to a subsequent action, between the same parties or those in privity with them."). "Collateral

estoppel, or issue preclusion, is that aspect of *res judicata* which prohibits the relitigation of an

issue when that issue was actually litigated and necessarily determined in a prior action between

the same parties upon a different claim." *Byars v. Berg*, 116 Conn. App. 843, 846 (2009)

(quoting *In re Juvenile Appeal (83–DE)*, 190 Conn. 310, 316 (1983)) (internal quotation marks

omitted).

State court judgments have *res judicata* effect in federal courts. *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 85 (1984). In evaluating the *res judicata* effects of a previous state court judgment, federal courts apply that state's rule of law as to res judicata. *Id.* at 81 ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *see also AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003) ("Where there is a final state court judgment, a federal court looks to that state's rules of *res judicata* to determine the preclusive effect of that judgment."). Connecticut uses a "transactional test as a guide to determin[e] whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of *res judicata.*" *Girolametti v. Michael Horton Assocs., Inc.*, 173 Conn. App. 630, 650 (2017), *aff'd*, 332 Conn. 67 (2019).

Bank of America argues that *res judicata* bars Ms. Williams's claims. BOA Mem. at 13–14. In their view, *res judicata* bars her claims because "Plaintiff is attempting to challenge the Judgment of Strict Foreclosure by taking a second bite at the apple." *Id.* at 14. According to them, "allowing Plaintiff's claims to go forward in this Court would require the parties to relitigate the judicial determinations made by the State [S]uperior Court as reflected in the Judgment of Strict Foreclosure[.]" *Id.*

Ms. Williams argues that "[r]es judicata does not apply for the same reason the Rooker-Feldman doctrine does not apply and also because [Ms. Williams is] alleging fraud which the Defendants concealed" from her. Pl.'s Obj. to BOA at 5.

Bank of America reiterates in its reply that "it is an inescapable conclusion that in bringing this lawsuit, Plaintiff seeks to re-litigate the validity of Judgment of Strict Foreclosure by alleging that 'the mortgage' should have been paid off" and that "any argument by Plaintiff

19

regarding a purported payoff would directly contravene the State Court's prior adjudication[.]" BOA Reply at 4.

The Court agrees.

Under Connecticut's transactional test, *res judicata* bars a plaintiff's claims where they arise out of the same transaction, or series of connected transactions, out of which the prior action arose. *Fink v. Golenbock*, 238 Conn. 183, 191 (1996). "What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* at 191–92 (internal citation and quotation marks omitted). "In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." *Id.* at 192.[15] Courts also consider issues raised in hearing transcripts in the earlier action. *See, e.g.*, *Spears v. Elder*, 156 Conn. App. 778, 788 (2015) (considering oral argument transcripts in determining whether *res judicata* applied); *Allstate Ins. Co. v. Farmington Auto Park, LLC*, No. CV166033614S, 2018 WL 2292860, at *4 (Conn. Super. Ct. May 1, 2018) (concluding, based on hearing transcripts from prior action, that plaintiff had previously raised the same claims).

---

[15] "[R]es *judicata* 'should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and others the certainty in the management of their affairs which results when a controversy is finally laid to rest. . . . We review the doctrine of res judicata to emphasize that its purposes must inform the decision to foreclose future litigation. The conservation of judicial resources is of paramount importance as our trial dockets are deluged with new cases daily. We further emphasize that where a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication.'" *Fink*, 238 Conn. at 192–93 (internal citations omitted).

20

"[W]here a party has fully and fairly litigated his claims, [the party] may be barred from future actions on matters not raised in the prior proceeding. But the scope of matters precluded necessarily depends on what has occurred in the former adjudication." *Bruno v. Geller*, 136 Conn. App. 707, 723 (2012) (quoting *State v. Ellis*, 197 Conn. 436, 467 (1985)).

On July 13, 2015, after a hearing, the Connecticut Superior Court for the Judicial District of New Britain entered a Judgment of Strict Foreclosure against Ms. Williams on the 2008 Mortgage, finding Ms. Williams's debt amount to be $308,110.76. Judgment of Strict Foreclosure. During the hearing, Ms. Williams contested the debt amount, arguing, exactly as she does here, that "the banking institutions . . . received $150,000 ten years ago that would have paid off the original mortgage, . . . they could see the funds, however, it was never applied to the mortgage." Tr. at 3:5–7; 3:27–4:1. When counsel for Nationstar pointed out that "this matter was discussed extensively in the ten scheduled mediations that we had," that the "insurance issue came about as the result of the 2004 fire" and associated with a former loan, and that "[t]his loan [currently being foreclosed on] was issued in 2008," Ms. Williams responded, "yes, it's a different mortgage," but "it is all part of the same problem, Your Honor." *Id.* at 4:25–5:22. She argued then, as she argues here, that Nationstar "says they also could see these insurance proceeds . . . but the issue has been no one can grab those proceeds to apply them to this current mortgage." *Id.* at 7:8–12.

The Superior Court judge stated to counsel for Ms. Williams:

> What I don't understand, sir, is if the amount of debt is in dispute, why at some point during this didn't you file an appropriate motion objective to the foreclosure so that this issue could have been litigated by way of an evidentiary hearing or whatever way. . . . All I have today is an affidavit of debt and that's unchallenged except by your statements here in court.

21

*Id.* at 8:5–10; 10:2–4. The judge further stated that he was "going to give [Ms. Williams] additional time to work through [a] short sale, if [she] can do it," and granted her an extended law date of October 12, 2015, "on [which] date, if you haven't worked something out, title to the property will pass from you to the bank[.]" The state court granted additional extensions of time, and Law Day ultimately passed without Ms. Williams redeeming the Florence Lane House. *See* Nationstar Foreclosure Action Docket; Order Setting New Law Day.

Ms. Williams's claims in the lawsuit here are identical to the issues she raised to contest the amount she owed in the state foreclosure proceeding: that Defendants wrongfully withheld insurance proceeds that would have paid off the 2003 Mortgage and prevented her from incurring additional loans or mortgages. After noting that Ms. Williams should have raised these arguments earlier in the foreclosure litigation and giving her ample time to execute a short sale to prevent entry of final judgment, the state court made a final judgment as to the debt Ms. Williams owed, rejecting her arguments contesting the amount of debt.

As a result, all of Ms. Williams's claims calling for the return of insurance proceeds are barred by *res judicata*, as they have already been litigated or should have been litigated in the state court foreclosure proceeding. *See Bruno*, 136 Conn. App. at 730 (quoting *Ellis*, 197 Conn. at 463 (internal quotation marks and alterations omitted)) ("A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose"); *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 300 Conn. 325, 352–53 (2011) (civil suit alleging misrepresentation and unfair trade practices claims barred by *res judicata* because determination of these claims would involve relitigating subject matter of earlier declaratory judgment action involving defendant's alleged improper termination of lease); *see also Byars*, 116 Conn. App. at 848–49 ("Issue preclusion

22

arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment." (quoting *Gladysz v. Planning & Zoning Comm'n*, 256 Conn. 249, 260 (2001)); *see also id.* at 848–49 (affirming trial court's finding that plaintiff's action was barred by collateral estoppel, because the plaintiff's "claims in both actions involve essentially the same parties, the same witnesses, arise from the same events and allege violation of the same sections of the General Statutes and the association's bylaws," the "conclusion that the executive board of the association was legally constituted and that the association engaged in lawfully binding business activities with the plaintiff was essential to the earlier judgment," and the "issue has been determined by a valid and final judgment").

Ms. Williams's claims for fraud based on alleged concealment of insurance proceeds (Counts I and II), for conversion based on alleged deprivation of insurance proceeds (Count III), for replevin based on alleged wrongful taking of insurance proceeds (Counts IV and V), and unjust enrichment for alleged wrongful retention of insurance proceeds (Count VI), therefore are all barred by *res judicata*.

Ms. Williams's CUTPA claim (Count VIII) also is barred by *res judicata* in this case. CUTPA is a consumer protection statute whose "purpose . . . is to protect consumers from unfair trade practices." *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997) (citing *Witham v. ITT Hartford*, No. CV 960132891, 1997 WL 325443, at *1 (Conn. Super. Ct. June 4, 1997)). CUTPA therefore "provides a statutory cause of action for any person who has suffered an ascertainable loss of money or property as a result of an unfair trade practice." *Bellemare v. Wachovia Mortgage Corp.*, 94 Conn. App. 593, 606 n.6 (2006). A CUTPA claim is not barred by *res judicata* where it challenges the defendant's practices in general which may lead to foreclosure, *see, e.g.*, *Tanasi*, 257 F. Supp. 3d at 261 (plaintiffs' claims that defendant misled

23

consumers about its loss mitigation policies and "request[ed] duplicative, unnecessary, or updates to documentation during the application process . . . [we]re not transactionally related to the Foreclosure Action and therefore should not be dismissed under res judicata"), but is barred by *res judicata* where it directly implicates the underlying nature of eventual foreclosure in that action, or is "transactionally related," *see, e.g.*, *id.* (plaintiffs' claim that the defendant violated CUTPA by unfairly applying its existing loss mitigation policies in their case was barred by *res judicata* because it "directly implicate[d] the eventual foreclosure judgment").

Ms. Williams's CUTPA claim falls under the latter category. She alleges that Defendants misrepresented the status of insurance proceed funds to her, Am. Compl. ¶¶ 50–57 (Count VIII), which led to her loan being improperly in foreclosure, a claim directly implicating the state court's decision in her foreclosure action.

Accordingly, Ms. Williams's claims all will be dismissed as barred by *res judicata*.

### C. Failure to State a Claim

Having found that Ms. Williams's claims are barred by *res judicata*, the Court need not address whether Ms. Williams might otherwise have stated a claim. All of her remaining claims, however, are time-barred in any event.

Although "[a] statute of limitations analysis is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiffs' claims[,]" "where the dates in a complaint clearly show that an action is barred by a statute of limitations [ ] a defendant [may] raise the affirmative defense in a pre-answer motion to dismiss." *Bartold v. Wells Fargo Bank, N.A.*, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *4 (D. Conn. Nov. 24, 2015) (internal citation and quotation marks omitted); *see also Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) ("'Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a

24

statutory bar,' such as lack of timeliness, 'as an affirmative defense and it is clear from the face

of the complaint, and matters of which the court may take judicial notice, that the plaintiff's

claims are barred as a matter of law.'" (quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d

406, 425 (2d Cir. 2008))); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)

("Where the dates in a complaint show that an action is barred by a statute of limitations, a

defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is

properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

relief can be granted."); *Slainte Investments Ltd. P'ship v. Jeffrey*, 142 F. Supp. 3d 239, 253–54

(D. Conn. 2015) ("In short, a motion to dismiss may be granted if a complaint's allegations

affirmatively establish an action's untimeliness, but it may not be granted simply because a

complaint failed to include allegations affirmatively establishing its timeliness.").

      All of Ms. Williams's state law claims have a three-year statute of limitations period,

except the unjust enrichment claim, which has a six-year statute of limitations period. *See* Conn.

Gen. Stat. § 42-110g(f) ("An action under [CUTPA] may not be brought more than three years

after the occurrence of a violation of this chapter."); Conn. Gen. Stat. § 52-577 ("No action

founded upon a tort shall be brought but within three years from the date of the act or omission

complained of."); *Stuart & Sons, L.P. v. Curtis Publ. Co.*, 456 F. Supp. 2d 336, 344 (D. Conn.

2006) (statute of limitations period for conversion, governed by Conn. Gen. Stat. § 52-577,

begins to run either "on the date the property was wrongfully taken" or "when the demand [for

return] is refused," depending on what type of conversion is alleged); *Cyrankowski v. Desrocher*,

No. HHD-CV-106015281-S, 2011 WL 3427219, at *3 (Conn. Super. Ct. July 7, 2011) (replevin

claims sound in tort and are therefore governed by Conn. Gen. Stat. § 52-577's three-year

limitations period, which begins to run when plaintiff "first demand[s] . . . the return of his

[property]"); [16] *Krondes v. Norwalk Savings Society*, 53 Conn. App. 102, 113 (1999) (three-year statute of limitations under Conn. Gen. Stat. § 52-577 applies to fraud and misrepresentation claims); *Corbett v. Petrillo*, No. CV-06-5005440-S, 2008 WL 726373, at *4 (Conn. Super. Ct. Feb. 29, 2008) (unjust enrichment claims sound in contract and are therefore governed by Conn. Gen. Stat. § 52-576(a), which provides that "[n]o action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues").

For all of Ms. Williams's claims with a three-year statute of limitations period, the statute of limitations period has lapsed. The Amended Complaint concedes, and the July 13, 2015, transcript from the Nationstar Foreclosure Action confirms, that the underlying factual allegations regarding all of these claims were known by July 31, 2015, if not earlier. Am. Compl. ¶ 18 (alleging that Ms. Williams "became aware that [Nationstar] was holding $152,000.00 of insurance proceed from the time of the Plaintiff's assumption of her father's mortgage because [Nationstar] admitted in open court that it had possession of the funds but did not know how to release [them]"); Tr. 3:5–7; 3:27–4:1 (Ms. Williams arguing that Defendant "banking institutions . . . received $150,000 ten years ago that would have paid off the original mortgage. . . . they could see the funds, however, it never was applied to the mortgage and this has been the argument back and forth"). More than three years then passed before Ms. Williams filed this lawsuit originally on December 9, 2018.

Ms. Williams argues generally that if the relevant statutes of limitations apply, they should be tolled in her case because she "did not discover the evidence to prove their claims until

---

[16] Ms. Williams has alleged both a "common law" and a statutory replevin claim. *See* Am. Compl. (Counts IV, V). As Defendants note, however, there is no common law replevin in Connecticut. *See* Nationstar Mem. at 19 (quoting *Cornelio v. Stamford Hosp.*, 246 Conn. 45, 49 (1998) ("In Connecticut, replevin proceedings are governed by statute rather than by the rules that apply to common-law actions of replevin.")); Caliber Mem. at 14 n.18 (same).

May 2018 because of the concealment by the defendants." Pl.'s Obj. to Nationstar & Caliber at 6. But the federal discovery rule, which permits tolling of certain statutes of limitations until the plaintiff discovers the injury, does not apply to the three-year statute of limitations for torts under Conn. Gen. Stat. § 52-577. *See Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 523 (2019) ("The Second Circuit may have had in mind the 'storm warnings' doctrine it has adopted in the context of certain federal actions that accrue upon discovery of the injury; but no such discovery rule is applicable to § 52-577." (internal citation omitted)).

The three-year statute of limitations period for fraud claims may be tolled under Conn. Gen. Stat. § 52-595, if the defendant "fraudulently conceals from [plaintiff] the existence of the cause of such action," in which case "such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." Conn. Gen. Stat. § 52-595. In order to plead fraudulent concealment, a plaintiff "must allege with particularity the circumstances surrounding the alleged fraudulent concealment in accordance with the heightened pleading requirements for fraud." *UCF I Tr. 1 v. Berkowitz, Trager & Trager, LLC*, No. 3:17-cv-1325 (VAB), 2019 WL 1430105, at *7 (D. Conn. Mar. 29, 2019) (quoting *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 504–05 (D. Conn. 2007)) (internal quotation marks and alterations omitted).[17]

Even if the Court were to find that Ms. Williams's fraud allegations were pleaded with sufficient particularity to toll the statute of limitations period for fraud, however, it would not save her claims. Ms. Williams argues that the statute of limitations period should be tolled until

---

[17] *See also Connell v. Colwell*, 214 Conn. 242, 250 (1990) ("'To establish that the [defendant] had fraudulently concealed the existence of [her] cause of action and so had tolled the statute of limitations, the [plaintiff] had the burden of proving that the [defendant was] aware of the facts necessary to establish this cause of action . . . and that [he] had intentionally concealed those facts from the [plaintiff].'" (quoting *Bound Brook Assocs. v. City of Norwalk*, 198 Conn. 660, 665 (1986))).

May 2018 because she did not possess evidence supporting her claims until then. Pl.'s Obj. to Nationstar & Caliber at 6; Pl.'s Obj. to BOA at 7. But under Conn. Gen. Stat. § 52-595, the statute of limitations period for fraud is only tolled until the plaintiff "first discovers its existence," not until the plaintiff possessed evidence of the alleged fraud. Indeed, the purpose of the discovery phase of litigation is for parties to uncover evidence they may not have had at the time the suit was initiated. Thus, even if Ms. Williams pleaded fraudulent concealment with sufficient particularity, the statute of limitations period would only be tolled until, at the very latest, July 2015, by which time she knew that the alleged fraud had occurred, more than three years before she filed this lawsuit on December 9, 2018.

The statute of limitations period for Ms. Williams's unjust enrichment claim has lapsed as well. Unjust enrichment claims must be brought "within six years after the right of action accrues." Conn. Gen. Stat. § 52-576(a); *see Corbett*, 2008 WL 726373, at *4 (stating that unjust enrichment claims, which sound in contract, are governed by Conn. Gen. Stat. § 52-576(a)).

Ms. Williams alleges that Defendants are "unjust[ly] . . . retain[ing] the money which belongs" to her, referring to "payoff funds" that should have been "applied to payoff the mortgage. . . . 13 years" before she initiated this lawsuit. Am. Compl. ¶¶ 42–43 (Count VI).[18] Her claim thus accrued seven years before the six-year statute of limitations period began to run. *See Levy v. World Wrestling Entm't, Inc.*, No. CIV.A.308-01289 (PCD), 2009 WL 455258, at *4 (D. Conn. Feb. 23, 2009) ("State law claims of breach of contract and unjust enrichment accrue when injury is inflicted without regard to a plaintiff's knowledge of injury being sustained.");

---

[18] Ms. Williams again does not distinguish among Defendants with regard to her unjust enrichment claim. As a result, Ms. Williams has not provided either in her Amended Complaint or in the attached exhibits that either Nationstar or Caliber possess any of the allegedly withheld funds. Thus, she could not sustain an unjust enrichment claim against these Defendants in any event. *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)).

*Tolbert v. Conn. Gen. Life Ins. Co.*, 257 Conn 118, 124–25 (2001) ("In an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . It is well established that *ignorance of the fact that damage has been done does not prevent the running of the statute*, except where there is something tantamount to a fraudulent concealment of a cause of action." (internal citations and quotation marks omitted) (emphasis in the original)). As a result, Ms. Williams's unjust enrichment claim too is untimely.[19]

Accordingly, even if *res judicata* did not apply to dismiss all of Ms. Williams's remaining claims, these claims nevertheless must be dismissed as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of July, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[19] Although the Court, "exercising its equitable powers, [is] not bound to apply § 52–577 to the unjust enrichment count," the "right of recovery under the doctrine of unjust enrichment is essentially equitable." *Rossman v. Morasco*, 115 Conn. App. 234, 256–57 (2009). There is no reason for this Court to exercise its discretion to permit tolling of the statute of limitations here. *See Dunham v. Dunham*, 204 Conn. 303, 326–27 (1987) ("[I]n an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. . . . Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obliged to adhere to those limitations."). Indeed, because the alleged basis for Ms. Williams' unjust enrichment claim is an alleged failure to apply the proceeds available under an insurance policy to pay off the first mortgage on the property, an underlying obligation arising from a contract, there might not be a viable unjust enrichment claim in any event. *See Geriatrics, Inc. v. McGee*, 332 Conn. 1, 24 (2019) ("A plaintiff may recover for unjust enrichment when a contract remedy is unavailable, to the extent that the defendant has unjustly profited at the plaintiff's expense.").